UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF COLORADO

| | | |
|---|---|---|
| In Re: | ) | |
| | ) | |
| CROSSOVER FINANCIAL I, LLC, | ) | CASE NO. 11-24257 SBB |
| EIN:  20-3295455, | ) | Chapter 11 |
| | ) | |
| Debtor. | ) | |

## [PROPOSED] DISCLOSURE STATEMENT TO ACCOMPANY DEBTOR'S CHAPTER 11 PLAN OF REORGANIZATION DATED OCTOBER 28, 2011

Crossover Financial I, LLC, Debtor-in-Possession submits this Disclosure Statement to accompany Debtor's Chapter 11 Plan of Reorganization dated October 28, 2011 ("Plan").

## INTRODUCTION

This disclosure statement (the "Disclosure Statement") is being provided to all known creditors in the chapter 11 bankruptcy case of Crossover Financial I, LLC (the "Debtor"). This Disclosure Statement contains information about the Debtor and describes the Debtor's Chapter 11 Plan of Reorganization dated October 28, 2011 filed by the Debtor on October 28, 2011. A full copy of the Plan is attached to this Disclosure Statement as **Exhibit A**. *Your rights may be affected. You should read the Plan and the Disclosure Statement carefully and discuss them with your attorney. If you do not have an attorney, you may wish to consult one.*

The proposed distribution under the Plan are discussed at pages 8 through 17 of this Disclosure Statement.

A.    **Purpose of the Disclosure Statement**

This Disclosure Statement is provided to disclose information which is deemed material, important and necessary for each creditor to arrive at a reasonable, informed decision in exercising the right to vote for acceptance or rejection of the Plan. The Disclosure Statement is subject to final approval pursuant to 11 U.S.C. §1125 by the United States Bankruptcy Court for the District of Colorado which requires the Disclosure Statement to contain adequate information for the purposes of voting. The Disclosure Statement describes:

- The Debtor and significant events during the bankruptcy case;
- How the Plan proposes to treat claims or equity interests of the type you hold (*i.e.* what you will receive on your claim or equity interest if the Plan is confirmed);
- Who can vote or object to the Plan;
- What factors the Bankruptcy Court (the "Court") will consider when deciding whether to confirm the Plan;
- Why the Debtor believes the Plan is feasible and how the treatment of your claim or equity interest under the Plan compares to what you would receive on your claim or equity interest in liquidation; and
- the effect of confirmation of the Plan.

Be sure to read the Plan as well as the Disclosure Statement.  This Disclosure Statement describes the Plan, but it is the Plan itself that will, if confirmed, establish your rights.

**B.     Deadlines for Voting and Objecting; Date of Plan Confirmation Hearing**

1.     *Time and Place of Hearing to Confirm the Plan*

The hearing at which the Court will determine whether to confirm the Place has been scheduled for **_____, 201__, at 10:30 ___.m., in Courtroom C-402, Byron Rogers Courthouse, 1929 Stout Street, Denver, Colorado.**

2.     *Deadline For Voting to Accept or Reject the Plan*

If you are entitled to vote to accept or reject the Plan, vote on the enclosed ballot and return the same to **Nicholls & Associates, P.C., counsel for Crossover Financial I, LLC, at 1850 Race Street, Denver, Colorado 80206.**  See section IV.A. below for a discussion of voting eligibility requirements.

Your ballot must be received on or before **5:00 p.m. on _____, 201__**or it will not be counted.

3.     *Deadline for Objecting to the Confirmation of the Plan*

Objections to the confirmation of the Plan must be filed withe Court and served upon Debtor's counsel, the Office of the United States Trustee and interested parties by **_____, 201__.**

4.     *Identity of Person to Contact for More Information*

If you want additional information about the Plan, you should contact Stephen C. Nicholls, Nicholls & Associates, P.C., 1850 Race Street, Denver, CO 80206.

-2-

C.      **Disclaimer**


NO REPRESENTATIONS ARE AUTHORIZED OTHER THAN AS SET FORTH IN THIS DISCLOSURE STATEMENT.  ANY REPRESENTATIONS OR INDUCEMENTS MADE TO SECURE YOUR ACCEPTANCE WHICH ARE OTHER THAN AS CONTAINED IN THIS STATEMENT SHOULD NOT BE RELIED UPON BY YOU IN ARRIVING AT YOUR DECISION.

THIS DISCLOSURE STATE HAS NEITHER BEEN APPROVED NOR DISAPPROVED BY THE SECURITIES AND EXCHANGE COMMISSION.  SIMILARLY, THE COMMISSION HAS NOT REVIEWED THE ACCURACY OR ADEQUACY OF THIS DISCLOSURE STATEMENT.

The information contained herein has not been subjected to a certified audit.  The Debtor is not able to warrant or represent that the information contained herein is without error, although all reasonable efforts under the circumstances have been made to ensure accuracy.  Much of the information contained herein is based upon statements of other persons and information contained in other documents, the accuracy of which may be subject to interpretation and/or challenge.

The information contained in this Disclosure Statement is information available as of September 2011, except as noted otherwise herein.  Changes may be necessary and any material changes may be considered by the Court at the hearing on confirmation of the Plan.  Financial information supplied by the Debtor has not been subject to audit.

**The Court has approved this Disclosure Statement as containing adequate information to enable parties affected by the Plan to make an informed judgment about its terms.  The Court has not yet determined whether the Plan meets the legal requirements for confirmation, and the fact that the Court has approved the Disclosure Statement  does not constitute an endorsement of the Plan by the Court, or a recommendation that it be accepted**.


D.      **Recommendation of the Debtor**

In the opinion of the Debtor, the Plan is the best available option for creditors.  The Plan provides the orderly liquidation of property of the estate and for the payment of creditors in fair and equitable manner.  The Plan minimizes administrative expenses that would be incurred through a Chapter 7 liquidation.  However, the Debtor makes no recommendation as to acceptance of the Plan and urges all creditors to vote on the Plan after their own careful analysis.

II.   **BACKGROUND**

A.   **Description and History of Debtor's Business**

The Debtor, Crossover Financial I, LLC, is a Colorado limited liability company formed on August 12, 2005.  Mitchell B. Yellen is the manager and sole member.  The company was formed for the purpose of raising funds through a Private Placement Memorandum to be loaned to an entity known as HPR, LLC ("HPR"), in connection with the acquisition and development of 440 acres of real property located ("Real Property") in El Paso County, Colorado described as follows:

PARCEL A

THE SOUTHWEST QUARTER AND THE WEST HALF OF THE SOUTHEAST QUARTER OF SECTION 19, TOWNSHIP 11 SOUTH, RANGE 66 WEST OF THE 6TH   P.M., COUNTY OF EL PASO, STATE OF COLORADO.

PARCEL B

THE EAST HALF OF THE OF THE SOUTHEAST QUARTER OF SECTION 24, TOWNSHIP 11 SOUTH, RANGE 66 WEST OF THE 6TH   P.M., COUNTY OF EL PASO, STATE OF COLORADO.

PARCEL C

THE NORTHEAST QUARTER OF THE NORTHEAST QUARTER OF SECTION 25, TOWNSHIP 11 SOUTH, RANGE 66 WEST OF THE 6TH   P.M., COUNTY OF EL PASO, STATE OF COLORADO.

PARCEL D

THE NORTH HALF OF THE NORTHWEST QUARTER OF SECTION 30, TOWNSHIP 11 SOUTH, RANGE 66 WEST OF THE 6TH   P.M., COUNTY OF EL PASO, STATE OF COLORADO.

EXCEPT ANY PORTION OF THE ABOVE DESCRIBED TRACTS CONTAINED WITH HIGBY ROAD AS SET FORTH IN RESOLUTION NO 05-241 RECORDED JUNE 21, 2005 UNDER RECEPTION NO. 205092635 AND CONVEYED IN WARRANTY DEED RECORDED JUNE 21, 2005 UNDER RECEPTION NO. 205092636

Originally, it was contemplated that the Debtor's activities would be limited to lending the funds raised through the PPM to HPR.

Through the PPM, the company issued 108 promissory notes in the aggregate amount of $21,542,000.00, primarily in 2005 and 2006.  The holders of the promissory notes ("Noteholders") represent the majority of the Debtor's creditors.

Funds raised through the PPM were loaned to HPR and evidenced by a promissory note dated December 13, 2005, in the principal amount of $20,000,000.00.  HPR also executed two additional promissory notes of the same date in the amount of $200,000.00 each.  The promissory

notes were secured by a Deed of Trust executed by HPR granting the Debtor a security interest in the real property.

HPR consisted of three members: Colorado Commercial Builders, Inc (37.5%); DJT, LLC (20.0%); and Yellen Family Partnership, LLLP (42.5%).   Mitchell Yellen held an interest in the Yellen Familiy Partnership, LLLP, as more fully disclosed in the PPM.

The loan proceeds were used by HPR to acquire the real estate, pay closing costs associated with the purchase, to repay existing indebtedness, to pay loan fees, interest and for development costs and other expenses. HPR used a portion of the proceeds from the loan to service the debt owed to the Debtor.  In turn, the Debtor paid interest to Noteholders in the approximate amount of $3,500,000.  It was understood and disclosed in the PPM that HPR's ability to service its debt was dependant upon the success of the development project.

The project stalled primarily as a result of a collapse in the residential real estate development market in 2007 and potential developers pulled out of the project. There has been no further development activity on the Real Property since 2007.

HPR defaulted on its obligations to the Debtor in the later part of 2007.  After the HPR default the Debtor could not pay the required interest Noteholders and the promissory notes went into default in approximately December 2007.

Faced with the prospect of a lengthy foreclosure proceeding, the Debtor entered into to an agreement with HPR whereby the Real Property was transferred to the Debtor by way of a deed-in-lieu of foreclosure.  Upon acquiring the Real Property, the Debtor attempted to bring in additional developers to continue the project but those efforts were unsuccessful.

Litigation was brought by Nolte Associates, Inc., arising from services provided in connection with the development project.  A judgment was eventually obtained and a transcript of judgment was recorded against the Real Property on April 22, 2010.  Colorado Capital Ventures, LLC, (CCV) an entity formed by certain Noteholders later acquired the judgment lien created by the recording of the transcript of judgment.

An additional law suit was commenced by Ross A. Reineke in approximately September 2009 seeking judgment on a promissory note.  In that lawsuit, the Debtor unsuccessfully sought to have the holders of the other promissory noted joined as parties to the case.

As the Debtor was unable to generate cash to meet litigation expenses, it issued a Revolving Line of Credit Deed of Trust dated March 29, 2010, between Mitchell B. Yellen, Wealth Wonks Capital LLC and Crossover Financial I, LLC for the benefit of M. Jim Zendejas of Stinar & Zendejas, LLC in the amount of $130,000.00 which was initially recorded on April 16, 2010 and then re-recorded on April 26, 2010 at reception no. 210038241. At the time the promissory note was issued in favor of Stinar & Zendejas ("S&J") it was representing the Debtor in two district court civil actions and a separate appeal.  The Debtor required representation in the matters but was unable

to generate cash to pay for the services. The Debtor owed the firm approximately $175,000 in fees and the issuance of the promissory was supported by adequate consideration. S&J was also owed significant sums by both Yellen and Wealthwonks Capital, LLC for services provided to those entities. Services provided to Wealthwonks and Yellen were not satisfied through the issuance of the Crossover note and Deed of Trust. The S&J note and Deed of Trust was later acquired by Colorado Capital Ventures, 2, LLC ("CCV2"), and as part of that transaction, additional amounts owed by the Debtor to S&J were released.

In addition, the Debtor issued a Deed of Trust dated June 17, 2010 between Crossover Financial I, LLC for the benefit of Allen & Vellone, P.C. in the amount of $90,000.00 recorded on June 21, 2010 at reception no. 210058205. The promissory to Allen & Vellone, P.C. was likewise issued by the Debtor in connection with legal services provided to the Debtor as a result of it's need for legal services and the inability to make cash payments for the same.

A third Deed of Trust dated June 23, 2010 between Crossover Financial I, LLC for the benefit of the 108 Noteholders in the amount of $21,542,000.00 was recorded on June 25, 2010 at reception no. 210060614 and re-recorded on March 21, 2011 at reception no. 211028297 to correct a copying error whereby certain names were cut off from Exhibit B listing the beneficiaries of the Deed of Trust. The Deed of Trust was granted to the Noteholders to secure the obligations arising from the promissory notes.

Finally, a fourth Deed of Trust dated February 22, 2011 between Crossover Financial I, LLC and Colorado Capital Ventures 3, LLC in the amount of $250,000.00 recorded on March 4, 2011 at reception no. 211023152 in connection with an agreement with Colorado Capital Ventures 3, LLC ("CCV3") to provide funds to the Debtor to meet ongoing expenses up to an amount not to exceed $250,000.00.

### B.     Events Leading to Chapter 11 Filing

At the time the bankruptcy case was filed the following secured claims were asserted the estate:

| Creditor | Basis of Claim | Priority | Amount of Claim |
|---|---|---|---|
| Colorado Capital Ventures, LLC | Transcript of Judgement (4/22/10) | First | $498,955.08 |
| Colorado Capital Ventures 2 LLC | Deed of Trust (4/26/10) | Second | $162,450.81 |
| Allen & Vellone, P.C. | Deed of Trust (6/22/10) | Third | $90,000.00 |
| Noteholders | Deed of Trust (6/25/10) | Fourth | $21,452,000.00 |
| Ross A. Reineke | Transcript of Judgment (8/25/10) | Fifth | $630,248.27 |
| Colorado Capital Ventures 3, LLC | Deed of Trust (3/4/11) | Sixth | $16,184.34 |
| DeCelles Trust | Transcript of Judgment (3/28/11) | Seventh | $1,681,856.87 |

| Creditor | Basis of Claim | Priority | Amount of Claim |
|---|---|---|---|
| First Regional Bank (DeCelles) | Transcript of Judgment (3/28/11) | Eighth | $1,237,975.40 |
| William R. and Geri A. Bowman | Transcript of Judgment (5/18/11) | Ninth | $576,543.88 |
| Bruce D. and Nancy J. Hacker | Transcript of Judgment (5/18/11) | Ninth | $396,529.42 |
| H. Thomas Hall | Transcript of Judgment (5/18/11) | Ninth | $425,473.61 |
| Louise M. Hall | Transcript of Judgment (5/18/11) | Ninth | $156,035.34 |
| Donna M. Harmon | Transcript of Judgment (5/18/11) | Ninth | $1,440,601.67 |
| James B. House | Transcript of Judgment (5/18/11) | Ninth | $504,466.07 |
| Curtis Massey | Transcript of Judgment (5/18/11) | Ninth | $439,986.24 |
| Kathleen M. Barton | Transcript of Judgment (5/18/11) | Ninth | $468,896.82 |
| Integrity Bank & Trust f/b/o IBAT | Transcript of Judgment (5/18/11) | Ninth | $562,142.37 |
| Stephen L. Schwartzbach | Transcript of Judgment (5/18/11) | Ninth | $1,693,285.19 |

In addition, judgments were obtained by the holders of an additional 68 promissory, however, the bankruptcy case was filed before a transcript of those judgments was recorded against the Real Property.

A second lawsuit was commenced by The DeCelles Trust and Philip DeCelles seeking to avoid the Deed of Trust issued for the benefit of the Noteholders, as well as the other Deeds of Trusts granted by the Debtor under the Colorado Uniform Fradulent Transfer Act.

As the Debtor did not have the resources to continue to defend the various lawsuits, protection was sought under the Bankruptcy Code to allow for the orderly liquidation of the Real Property and to insure the fair and equitable treatment of it's creditors.

C.      **Management of the Debtor Before and During the Bankruptcy.**

Mitchell B. Yellen is the manager and sole member of the Debtor.  Mr. Yellen is not receiving compensation from the Debtor.

D.      **Significant Events During the Bankruptcy Case**

The Debtor has sought approval to enter in a listing contract for the sale of the property.

E.     **Projected Recovery of Avoidable Transfers**

The Debtor has commenced two adversary proceedings seeking to avoid the judicial liens obtained by the DeCelles Group and the Bowman Group within the 90 immediately preceding the filing of the bankruptcy case as preferential transfers under 11 U.S.C. §547, however, no monetary claims have been asserted in those actions.

The Debtor has not yet completed its investigation with regard to other pre-petition transactions, including the issuance of the Deeds of Trust and the Debtor reserves the right to assert such claims if warranted.

F.     **Claims Objections**

Except to the extent that a claim is already allowed pursuant to a final non-appealable order, the Debtor reserves the right to object to claims. Therefore, even if your claim is allowed for voting purposes, you may not be entitled to a distribution if an objection to your claim is later upheld. The procedures for resolving disputed claims are set forth in Article V of the Plan.

G.     **Current and Historical Financial Condition**

The Debtor's material assets are set forth below:

| | |
|---|---:|
| DIP Checking Account Balance (as of Sept. 30, 2011): | $340.79 |
| Real Property (scheduled value) | $14,000,000.00 |
| Residential Month to Month Lease | Unknown |
| Grazing Lease | Unknown |

The Debtor's Plan provides for the liquidation of the Real Property. No operations are contemplated after the property is sold.

A copy of the Debtor's Profit & Loss Statement, Balance Sheet and Statement of Cash Flows is attached hereto as **Exhibit B**.

III.   **SUMMARY OF THE PLAN OF REORGANIZATION AND TREATMENT OF CLAIMS AND EQUITY INTERESTS**

A.     **What is the Purpose of the Plan of Reorganization?**

As required by the Code, the Plan places claims and equity interest in various classes and describes the treatment each class will receive. The Plan also states whether each class of claims or equity interests is impaired or unimpaired. If the Plan is confirmed, your recovery will be limited to the amount provided by the Plan.

B.   **Unclassified Claims**

Certain types of claims are automatically entitled to specific treatment under the Code. They are not considered impaired, and holders of such claims do not vote on the Plan. They may, however, object, if in their view, their treatment under the Plan does not comply with that required by the Code.   As such, the Plan Proponent has *not* placed the following claims in any class:

1.   *Administrative Expenses*

Administrative expenses are costs or expenses of administering the Debtor's chapter 11 case which are allowed under §507(a)(2) of the Code. Administrative expenses also include any goods sold to the Debtor in the ordinary course of business and received within 20 days before the date of the bankruptcy petition. The Code requires that all administrative expenses be paid on the effective date of the Plan, unless a particular claimant agrees to a different treatment.

The following chart lists the Debtor's estimated administrative expenses, and their proposed treatment under the Plan:

| Type | Estimated Amount Owed | Proposed Treatment |
| --- | --- | --- |
| Expenses Arising in the Ordinary Course of the Business After the Petition Date | $0.00 | Post-petition obligations incurred in the course of the Debtor's business affairs have been timely paid pursuant to the terms of the respective obligations. To the extent that obligations are outstanding at the time of confirmation, they will be paid in full on the effective date of the Plan, or according to the terms of the obligation if later |
| The Value of Goods Received in the Ordinary Course of Business Within 20 Days before the Petition Date | $0.00 | No obligations of this nature exist |
| Professional Fees approved by the Court | $30,000.00 (Estimated) | Paid in full on the effective date of the Plan, or according to separate written agreement, or according to court order if such fees have not been approved by the Court on the effective date of the Plan |
| Clerk's Office Fees | $0.00 | Paid in full on the effective date of the Plan |

-9-

| Other Administrative Expenses | $0.00 | Paid in full on the effective date of the Plan, or according to separate written agreement |
|---|---|---|
| Office of the U.S. Trustee Fees | $20,000.00 | Paid in full on the effective date of the Plan. Based on its current income and expenses, the Debtor is required to pay the minimal quarterly fee of $325 from revenues generated from the leases on the Real Property.  Upon the sale of the Real Property, a quarterly fee in the amount of $20,000.00 will be payable if the gross proceeds of sale exceed $15,000,000.00, or $13,000.00 if the gross proceeds are less than $15,000,000.00. |
| TOTAL | $50,000.00 | |

### 2.   *Priority Tax Claims*

Priority tax claims are unsecured income, employment and other taxes described by §507(as)(8) of the Code.  Unless the holder of such a §507(a)(8) priority tax claim agrees otherwise, it must receive the present value of such claim, in regular installments paid over a period not exceeding 5 years from the order of relief.

The following chart lists the Debtor's estimated §507(a)(8) priority tax claims and their proposed treatment under the Plan:

| Description | Estimated Amount Owed | Date of Assessment | Treatment |
|---|---|---|---|
| None | | | |

### C.   **Classes of Claims and Equity Interests**

The following are the classes set forth in the Plan, and the proposed treatment that they will receive under the Plan:

### 1.   *Classes of Secured Claims*

Allowed Secured Claims are secured by property of the Debtor's bankruptcy estate (or are subject to setoff) to the extent allowed as secured claims under §506 of the Code.  If the value of the collateral or setoffs securing the creditor's claim is less that the amount of the creditor's allowed secured claim, the deficiency will treated as a Class 11 claim.

-10-

The identity of the holders of claims in Class 5 is set forth in Article II of the Plan. The following chart lists all classes containing Debtor's secured pre-petition claims and their proposed treatment under the Plan:

| Class | Impairment | Treatment |
|---|---|---|
| Class 2 - Secured Claim of Colorado Capital Ventures, LLC | Unimpaired | Colorado Capital Ventures, LLC, filed Proof of Claim numbered 13 in the amount of $500,455.08.  The claim was filed as a secured claim in the amount of $498,955.08 arising from the assignment of a transcript of judgment recorded on April 22, 2010, in the original amount of $448,346.03.  The claim also includes an unsecured amount of $1,500.00.<br><br>Pursuant to 11 U.S.C. §506(a) (1) "An allowed claim of a creditor secured by a lien on property in which the estate has an interest...is a secured claim to the extent of the value of such creditor's interest in the estate's interest in such property...and is an unsecured claim to the extent that the value of such creditor's interest...is less than the amount of such allowed claim.  11 U.S.C. §506(b) provides: "To the extent that an allowed secured claim is secured by property the value of which, after any recovery under subsection (c) of this section, is greater than the amount of such claim, there shall be allowed to the holder of such claim, interest on such claim, and any reasonable fees, costs, or charges provided for under the agreement or State statute under which such claim arose."<br><br>The secured claim represents the first priority lien against the Real Property.  The value of Real Property exceeds the amount of the secured claim. To the extent allowed, the Class 2 secured claim will be paid in full, including interest and other charges allowable under Section 506 of the Bankruptcy Code from the proceeds of the sale of the Real Property.<br><br>The Debtor reserves any rights it may have to file a objection to allowance of the claim if appropriate.  To the extent that any portion of the secured claim is disallowed, any such amount will be treated as a Class 11 Unsecured Claim.<br><br>The $1,500.00 unsecured amount set forth in the Proof of Claim will be treated as a Class 11 Unsecured Claim. |

| Class | Impairment | Treatment |
|-------|-----------|-----------|
| Class 3 - Secured Claim of Colorado Capital Ventures 2, LLC | Unimpaired | Colorado Capital Ventures 2, LLC, filed Proof of Claim numbered 14 in the amount of $162,450.81.  The claim was filed as a secured claim in the amount of $162,450.81 arising from the assignment of a Deed of Trust dated March 29, 2010, between Mitchell B. Yellen, Wealth Wonks Capital LLC and Crossover Financial I, LLC for the benefit of M. Jim Zendejas of Stinar & Zendejas, LLC in the amount of $130,000.00 initially recorded on April 16, 2010 and re-recorded on April 26, 2010, in the original amount of $130,000.00 for legal services provided to the Debtor.<br><br>Pursuant to 11 U.S.C. §506(a) (1) "An allowed claim of a creditor secured by a lien on property in which the estate has an interest...is a secured claim to the extent of the value of such creditor's interest in the estate's interest in such property...and is an unsecured claim to the extent that the value of such creditor's interest...is less than the amount of such allowed claim.  11 U.S.C. §506(b) provides: "To the extent that an allowed secured claim is secured by property the value of which, after any recovery under subsection (c) of this section, is greater than the amount of such claim, there shall be allowed to the holder of such claim, interest on such claim, and any reasonable fees, costs, or charges provided for under the agreement or State statute under which such claim arose."<br><br>The secured claim represents the second priority lien against the Real Property.  The value of Real Property exceeds the amount of the secured claim. To the extent allowed, the Class 3 secured claim will be paid in full, including interest and other charges allowable under Section 506 of the Bankruptcy Code from the proceeds of the sale of the Real Property.<br><br>The Debtor reserves any rights it may have to file a objection to allowance of the claim if appropriate.  To the extent that any portion of the secured claim is disallowed, any such amount will be treated as a Class 11 Unsecured Claim. |

| Class | Impairment | Treatment |
|-------|------------|-----------|
| Class 4 - Secured Claim of Allen and Vellone, P.C. | Impaired | The claim of Allen & Vellone, P.C., was scheduled as a secured claim in the Debtor's schedules in the amount of $90,000.00 arising from a Deed of Trust dated June 17, 2010 between Crossover Financial I, LLC for the benefit of Allen & Vellone, P.C. in the amount of $90,000.00 recorded on June 21, 2010, for legal services provided to the Debtor.  The claim was not scheduled as contingent, unliquidated or disputed by the Debtor.<br><br>The secured claim represents the third priority lien against the Real Property.  The value of Real Property exceeds the amount of the secured claim. To the extent allowed, the Class 3 secured claim will be paid from the proceeds of the sale of the Real Property.  The claim will not be entitled to interest or other amounts that may be allowable under Section 506 of the Bankruptcy Code because no Proof of Claim was timely filed.<br><br>The Debtor reserves any rights it may have to file a objection to allowance of the claim if appropriate.  To the extent that any portion of the secured claim is disallowed, any such amount will be treated as a Class 11 Unsecured Claim. |

| Class | Impairment | Treatment |
|-------|------------|-----------|
| Class 5 - Secured Claim of Noteholders | Impaired | Class 5 claims consist of the claims of the holders of 108 promissory notes issued by the Debtor under a Private Placement Memorandum and secured by a Deed of Trust dated June 23, 2010 between Crossover Financial I, LLC for the benefit of the 108 Noteholders in the amount of $21,542,000.00 recorded on June 25, 2010 at reception no. 210060614 and re-recorded on March 21, 2011 at reception no. 211028297 to correct a copying error whereby certain names were cut off from Exhibit B listing the beneficiaries of the Deed of Trust.<br><br>The secured claim represents the fourth priority lien against the Real Property.  The principal amount of the Deed of Trust exceeds the fair market value of the Real Property.<br><br>Class 5 claimants shall receive the balance of the proceeds of sale of the Real Property on a pro rata basis of the principal amount of the respective promissory notes after the payment of unclassified administrative expenses and claims in Classes 2, 3, 4 and 5.<br><br>Pursuant to Section 506 of the Bankruptcy Code, to the extent that proceeds from the sale of the Real Property are insufficient to pay the principal amount of the promissory notes in full, any unpaid principal balance, together with accrued interest and other charges will be treated as a Class 11 Unsecured Claim. |
| Class 6 - Secured Claim of Ross A. Rieneke | Impaired | Ross A. Rieneke filed Proof of Claim numbered 15 in the amount of $630,248.27.  The claim was filed as a secured claim arising from a transcript of judgment recorded on August 25, 2010, in the original amount of $563,417.60, or alternatively, as a secured claim as a beneficiary of the Deed of Trust dated June 23, 2010.<br><br>The claim of Ross A. Rieneke as a beneficiary of the Deed of Trust dated June 23, 2010 is allowed as a Class 5 claim.<br><br>To the extent that the claim is asserted as arising from the judgment lien created upon the filing of the transcript of judgment, the fair market value of Real Property is less that the amount of the senior secured claims (Class 2 through Class 5) and pursuant to 11 U.S.C. §506, the balance of the claim not paid as a Class 5 claim will be treated as a Class 11 Unsecured Claim. |

| Class | Impairment | Treatment |
|---|---|---|
| Class 7 - Secured Claim of Colorado Capital Ventures, LLC | Impaired | Colorado Capital Ventures 3, LLC, filed Proof of Claim numbered 12 in the amount of $16,184.34. The claim was filed as a secured claim arising from a Deed of Trust recorded on March 4, 2011.<br><br>The fair market value of Real Property is less that the amount of the senior secured claims (Class 2 through Class 6) and pursuant to 11 U.S.C. §506, the claim will be treated as a Class 11 Unsecured Claim. |
| Class 8 - Secured Claim of The DeCelles Trust | Impaired | The DeCelles Trust filed Proof of Claim numbered 11 in the amount of $1,681,856.67. The claim was filed as a secured claim arising from a transcript of judgment recorded on March 28, 2011, in the original amount of $1,681,856.67, or alternatively, as a secured claim as a beneficiary of the Deed of Trust dated June 23, 2010.<br><br>The claim of The DeCelles Trust as a beneficiary of the Deed of Trust dated June 23, 2010 is allowed as a Class 5 claim.<br><br>To the extent that the claim is asserted as arising from the judgment lien created upon the filing of the transcript of judgment, the fair market value of Real Property is less that the amount of the senior secured claims (Class 2 through Class 7) and pursuant to 11 U.S.C. §506, the balance of the claim not paid as a Class 5 claim will be treated as a Class 11 Unsecured Claim. |
| Class 9 - Secured Claim of First Regional Bank, c/o Trust Administrative Services Corporation FBO Philip P. DeCelles | Impaired | First Regional Bank, c/o Trust Administrative Services Corporation FBO Philip P. DeCelles filed Proof of Claim numbered 10 in the amount of $1,237,975.40. The claim was filed as a secured claim arising from a transcript of judgment recorded on March 28, 2011, in the original amount of $1,237975.40, or alternatively, as a secured claim as a beneficiary of the Deed of Trust dated June 23, 2010.<br><br>The claim of First Regional Bank, c/o Trust Administrative Services Corporation FBO Philip P. DeCelles as a beneficiary of the Deed of Trust dated June 23, 2010 is allowed as a Class 5 claim.<br><br>To the extent that the claim is asserted as arising from the judgment lien created upon the filing of the transcript of judgment, the fair market value of Real Property is less that the amount of the senior secured claims (Class 2 through Class 8) and pursuant to 11 U.S.C. §506, the balance of the claim not paid as a Class 5 claim will be treated as a Class 11 Unsecured Claim. |

-15-

| Class | Impairment | Treatment |
|-------|-----------|-----------|
| Class 10 - Secured Claim of William R. Bowman and Geri A. Bowman; Bruce D. Hacker and Nancy J. Hacker; H. Thomas Hall and Lousie M. Hall; Donna M. Harmon; James B. House; Curtis Massey; Kathleen H. Barton; Integrity Bank and f/b/o "IBAT," a Colorado corporation; and Stephen L. Schwartzbach | Impaired | The holders of Class 10 claims:  William R. Bowman and Geri A. Bowman; Bruce D. Hacker and Nancy J. Hacker; H. Thomas Hall and Lousie M. Hall; Donna M. Harmon; James B. House; Curtis Massey; Kathleen H. Barton; Integrity Bank and f/b/o "IBAT," a Colorado corporation; and Stephen L. Schwartzbach eached filed proofs of claim against the bankruptcy estate as a secured claims arising from a transcript of judgment recorded on May 18, 2011, in the aggregate original amount of $6,608,198.29, or alternatively, as secured claims as beneficiaries of the Deed of Trust dated June 23, 2010.<br><br>The claims of the Class 10 claimants as beneficiaries of the Deed of Trust dated June 23, 2010 are allowed as a Class 5 claims.<br><br>To the extent that the claims are asserted as arising from the judgment lien created upon the filing of the transcript of judgment, the fair market value of Real Property is less that the amount of the senior secured claims (Class 2 through Class 9) and pursuant to 11 U.S.C. §506, the balance of the claims not paid as Class 5 claims will be treated as a Class 11 Unsecured Claim. |

2.      *Classes of Unsecured Priority Claims*

Certain priority claims that are referred to in §507(a)(1), (4), (5), (6) and (7) of the Code are required to be place in classes.  The Code requires that each holder of such claim receive cash on the effective date of the Plan equal to the allowed amount of such claim.  However, a class of holders of such claims may vote to accept different treatment.

The following chart lists all classes containing claims under §507(a)(1), (4), (5), (6) and (7) of the Code and their proposed treatment under the Plan:

| Class | Impairment | Treatment |
|-------|-----------|-----------|
| Class 1 - Priority Claims | Unimpaired | No Class 1 claims exist.  No Proofs of Claim asserting entitlement to priority treatment have been filed. |

3.      *Classes of General Unsecured Claims*

General unsecured claims are not secured by property of the estate and are not entitled to priority under §507(a) of the Code.

The following chart sets forth the Plan's proposed treatment of Classes 11:

| Class | Description | Impairment | Treatment |
|-------|-------------|------------|-----------|
| 11 | Unsecured Claims | Impaired | Class 11 consists of any unsecured portion of claims in Classes 2 through 10 as a result of the bifurcation of the respective claims under Section 506 of the Bankruptcy Code or any other portion of the claims that may disallowed as secured claims.<br><br>It is not expected that unsecured claims will receive distributions under the plan.<br><br>To the extent that potential litigation is commenced by the Debtor and results in any monetary recovery, the net monetary recovery (after deduction of any associated fees, costs, or other expenses) shall be distributed the holders of Class 11 claims on a pro rata basis. |

4.      *Classes of Equity Interest Holders*

Equity interest holders are parties who hold an ownership interest (*i.e.* equity interest) in the Debtor.  In a corporation, entities holding preferred or common stock are equity interest holders. In a partnership, equity interest holders include both general and limited partners.  In a limited liability company ("LLC"), the equity interest holders are the members.  Finally, with respect to an individual who is a debtor, the Debtor is the equity interest holder.

The following chart sets forth the Plan's proposed treatment of the classes of equity interest holders:

| Class | Description | Impairment | Treatment |
|-------|-------------|------------|-----------|
| 12 | Equity Claims | Impaired | Mitchell Yellen, the sole member of the Debtor will not receive any distributions under the plan. |

-17-

D.     **Means of Implementing the Plan**

1.     *Source of Payments*

The Debtor will fund the Plan by liquidating the Real Property. On October 20, 2011, the Debtor filed an Application to Appoint and Employ Real Estate Broker and Approve Listing Contract whereby the Chapter 11 Debtor-in-Possession sought authority to enter into an Exclusive Right-to-Sell Listing Contract with Karen McClaflin and Home Source Realty, LLC, for the purpose of soliciting offers for the purchase of the Real Property. The Listing Contract provided for a sales commission of 5.0% of the gross sales price.

The Listing Contract provides that the sale of the Real Property is subject to Bankruptcy Court which will be sought through a separate motion.

Pursuant to 11 U.S.C. §363(b) and (f), the Debtor-in-Possession may sell property of the estate after notice and the opportunity for hearing free and clear of liens or encumbrances against the property **with such liens or encumbrances to attach to the proceeds of sale to the same extent and in the same order and priority as such liens and encumbrances presently exist.**

All liens and encumbrances against the property, of public record or not, will be released, with the security interests evidenced thereby to be substituted in the form of the proceeds of the sale of the property, which security interests shall attach to such sale proceeds in the same order of priority as existed prior to such sale.

From the proceeds of sale, it is anticipated that the following expenses will be paid at closing:

a.     An amount necessary to satisfy any outstanding real estate taxes including the Bankruptcy Estate's pro rata share of accrued but not yet payable real estate taxes;

b.     Other actual and necessary expenses incident to the closing of the sale such as title insurance, customary closing fees and applicable escrows;

c.     Any reasonable and necessary adjustments or credits that may be necessary to close any proposed sale; and

d.     Real Estate commissions subject to Bankruptcy Court approval.

The liens, encumbrances or interests held by Class 2, 3, 4, 5, 6, 7, 8, 9 and 10 claimants will attach to the remaining proceeds of sale. After the payment of allowed administrative

-18-

expenses, proceeds of sale will distributed in accordance with any confirmed plan of reorganization.


E.     **Risk Factors**

The most significant risk to the Plan is that the sale price of the Real Property will be less than anticipated. During the last six months residential real estate development along the front range has increased and the Debtor believes through a comprehensive marketing strategy the highest and best price will be obtained for the sale of the property.


F.     **Executory Contracts and Unexpired Leases**

Article XI of the Plan lists all executory contracts and unexpired leases that the Debtor will assume under the Plan. Assumption means the Debtor has elected to continue to perform the obligations under such contracts and unexpired leases, and to cure defaults of the type that must be cured under the Code, if any. Article XI of the Plan also lists how the Debtor will cure and compensate the other party to such contract or lease for any such defaults.

If you object to the assumption of your unexpired lease or executory contract, the proposed cure of any defaults, or the adequacy of assurance of performance, you must file and serve your objection to the Plan within the deadline for objecting to confirmation of the Plan, unless the Court has set an earlier time.

All executory contracts and unexpired leases that are not listed in Article XI of the Plan will be rejected under the Plan. Consult your adviser or attorney for more specific information about particular leases or contracts.

If you object to the rejection of your contract or lease, you must file and serve your objection to the Plan within the deadline for objecting to confirmation of the Plan.

*Under the terms of the Plan, the Deadline for Filing a Proof of Claim Based on a Claim Arising from the Rejection of a Lease or Contract is no later than thirty (30) days after the date of the order confirming this Plan*. Any claim based on the rejection of a contract or lease will be barred if the proof of claim is not timely filed, unless the Court orders otherwise.

G.     **Tax Consequences of the Plan**

*Creditors and Equity Interest Holders Concerned with How the Plan May Affect Their Tax Liability Should Consult with Their Own Accountants, Attorneys and/or Advisors.*

-19-

IV.     **CONFIRMATION REQUIREMENTS AND PROCEDURES**

     To be confirmable, the Plan must meet the requirements listed in §1129(a) or (b) of the Code. These include the requirements that: the Plan must be proposed in good faith; at least one impaired class of claims must accept the Plan, without counting the votes of insiders; the Plan must distribute to each creditor and equity interest holder at least as much as the creditor or equity interest holder would receive in a chapter 7 liquidation case, unless the creditor or equity interest holder votes to accept the Plan; and the Plan must be feasible.  The requirements are <u>not</u> the only requirements listed in §1129, and they are not the only requirements for confirmation.

     A.     **Who May Vote or Object**

     Any party in interest may object to the confirmation of the Plan if the party believes that the requirements for confirmation are not met.

     Many parties in interest, however, are not entitled to vote to accept or reject the Plan.  A creditor or equity interest holder has a right to vote for or against the Plan only if that creditor or equity interest holder has a claim or equity interest that is both (1) allowed or allowed for the purposes of voting and (2) impaired.

     In this case, the Plan Proponent believes that classes 4, 5, 6, 7, 8, 9, 10, 11 and 12 are impaired and that holders claims in each of these classes are therefore entitled to vote to accept or reject the Plan.  The Plan Proponent believes that classes 1, 2 and 3 are unimpaired and that holders of claims in each of these classes, therefore, do not have the right to vote to accept or reject the Plan.

     1.     *What is an Allowed or an Allowed Equity Interest?*

     Only a creditor or equity interest holder with an allowed claim or allowed equity interest has the right to vote on the Plan.  Generally a claim or equity interest is allowed if either (1) the Debtor has scheduled the claim on the Debtor's schedules, unless the claim has been scheduled as disputed contingent or unliquidated, or (2) the creditor has filed a proof of claim or equity interest, unless as objection has been filed to such proof of claim or equity interest.  When a claim or equity interest is not allowed, the creditor or equity interest holder holding the claim or equity interest cannot vote unless the Court, after notice and hearing, either overrules the objection or allows the claim or equity interest for voting purposes pursuant to Rule 3018(a) of the Federal Rules of Bankruptcy Procedure.

     On July 18, 2011, the Court entered an order establishing **September 6, 2011, as the deadline for filing proofs of claim** (Docket No. 31).

2.       *What is an Impaired Claim of Equity Interest?*

As noted above, the holder of an allowed claim or equity interest has the right to vote only if it is in a class that is *impaired* under the Plan.  As provided in §1124 of the Code, a class is considered impaired if the Plan alters the legal, equitable, or contractual rights of members of that class.

3.       *Who is **Not** Entitle to Vote*

The holders of the following five types of claims and equity interests are *not* entitled to vote:

• holders of claims and equity interest that have been disallowed by an order of the Court;

• holders of other claims or equity interests that are not "allowed claims" or "allowed equity interests" (as discussed above), unless they have been "allowed" for voting purposes;

• holders of claims or equity interests in unimpaired classes;

• holders of claims entitled to priority pursuant to §507(a)(2), (3) and (8) of the Code;

• holders of claims or equity interests that do not receive or retain any value under the Plan; and

• administrative expenses.

**Even If You Are Not Entitled to Vote on the Plan, You Have a Right to Object to the Confirmation of the Plan.**

4.       *Who Can Vote in More Than One Class*

A creditor whose claim has been allowed in part as a secured claim and in part as an unsecured claim, or who otherwise holds claims in multiple classes, is entitled to accept or reject a Plan in each capacity, and should cast one ballot for each claim.

B.       **Votes Necessary to Confirm the Plan**

If impaired classes exist, the Court cannot confirm the Plan unless (1) at least one impaired class of creditors has accepted the Plan without counting the votes of any insiders within that class, and (2) all impaired classes have voted to accept the Plan, unless the Plan is eligible to be confirmed by "cram down" on non-accepting classes, as discussed later in Section B.2.

1.      *Votes Necessary for a Class to Accept the Plan*

A class of claims accepts the Plan if both of the following occur: (1) the holders of more than one-half (½) of the allowed claims in the class, who vote, cast their votes to accept the Plan, and (2) the holders of at least two-thirds (2/3) in dollar amount of the allowed claims in the class, who vote, cast their votes to accept the Plan.

A class of equity interests accepts the Plan if the holders of at least two-thirds (2/3) in amount of the allowed equity interests in the class, who vote, cast their votes to accept the Plan.

2.      *Treatment of Nonaccepting Classes*

Even if one or more impaired classes reject the Plan, the Court may nonetheless confirm the Plan in the nonaccepting classes are treated in a manner prescribed by §1129(b) of the Code. A plan that binds nonaccepting classes is commonly referred to as a "cram down" plan. The Code allows the Plan to bind nonaccepting classes of claims or equity interests if it meets all the requirements for consensual confirmation except the voting requirements of §1129(a)(8) of the Code, does "discriminate unfairly," and is "fair and equitable" toward each impaired class that has not voted to accept the Plan.

**You should consult your own attorney if a "cram down" confirmation will affect your claim or equity interest, as the variations on this general rule are numerous and complex.**

C.      **Liquidation Analysis**

To confirm the Plan, the Court must find that all creditors and equity interest holders who do not accept the Plan will receive at least as much under the Plan as such claim or equity interest holders would receive in a chapter 7 liquidation. Because the Plan provides for the liquidation of property of the estate the primary difference between the Plan and liquidation through a Chapter involves allowable administrative expenses. Under 11 U.S.C §326, a Chapter 7 Trustee is entitle to assert a claim for compensation based on the gross proceeds collected by the bankruptcy estate. The statute provides for a commission of 25% of the first $5,000 collected; 10% of the next $45,000 collected; 5% of amount collected between $50,000 and $1,000,000; 3% of amounts collected in excess of $1,000,000. For purposes of this liquidation analysis, the gross proceeds of the sale of the Real Property is assumed to be at the value set for forth in the Debtor's schedules, the actual sales price may vary. The difference between the Plan and hypothetical Chapter 7 Liquidation is illustrated below:

|  | **Chapter 11 Plan** | **Chapter 7 Liquidation** |
|---|---|---|
| Gross Sales Price of Real Property | $14,000,000.00 | $14,000,000.00 |
| Less:    Closing Costs (Estimated) | ($25,000.00) | ($25,000.00) |
| Brokers' Commission (5%) | ($700,000.00) | ($700,000.00) |
| Estimated Chapter 11 Administrative Expenses | ($30,000.00) | $0.00 |
| Estimated UST Quarterly Fees | ($13,000.00) | $0.00 |
| Estimated Chapter 7 Administrative Expenses | $0.00 | ($443,250.00) |
| CCV Secured Claim (Class 2) | ($498,955.08) | ($498,955.08) |
| CCV2 Secured Claim (Class 3) | ($162,450.81) | ($162,450.81) |
| Allen & Vellone Secured Claim (Class 4) | ($90,000.00) | ($90,000.00) |
| **Funds Available to Pay Noteholder Claims** | **$12,480,605.11** | **$12,080,351.11** |

Under the Plan, Noteholders would receive approximately $400,000.00 more than under a Chapter 7 Liquidation.

The DeCelles Group commenced litigation in state court against the Debtor as well as the other Noteholders arguing that the claims asserted by Colorado Capital Ventures 2, LLC Allen & Vellone, P.C., and Colorado Capital Ventures 3, LLC, as well as the Deed of Trust granted in favor of the Noteholders can be set aside under the provisions of the Colorado Uniform Fraudulent Act. While the Debtor believes that such claims would not succeed, even if a Chapter 7 Trustee elected to pursue the claims and was successful in avoiding the claims of Colorado Capital Ventures 2, LL ($162,450.81); Allen & Vellone, P.C. ($90,000.00); and Colorado Capital Ventures 3, LLC ($16,184.34), Noteholders would still receive a higher distribution under the Chapter 11.

In the Debtor's opinion, it is unlikely that a trustee would seek to avoid the Deed of Trust issued in favor of the Noteholders. As the secured claims asserted by the DeCelles Group and those arising from the transcript of judgment recorded on May 18, 2011 (the "Bowman Group") are avoidable as preferential transfers, such an action would only inure to benefit of Ross A. Reineke. Mr. Reineke's secured claim arises from a judicial lien created by the filing of a transcript of judgment outside of the 90 day preference period but is junior to the Deed of Trust granted in favor of all the Noteholders. Under such a scenario, after the payment of Mr. Reineke's claim in full ($630,248.27) remaining proceeds would be distributed to all other creditors of the estate as unsecured creditors on a pro rata basis.

-23-

D.    **Feasibility**

The Court must find that confirmation of the Plan is not likely to be followed by liquidation, or the need for further financial reorganization, of the Debtor or any successor to the Debtor, unless such liquidation or reorganization is proposed in the Plan.  The Debtor's Plan provides for the liquidation of estate property.

*You Should Consult with Your Accountant of other Financial Advisor If You Have Any Questions Pertaining to These Projections.*

V.    **EFFECT OF CONFIRMATION OF PLAN**

A.    **NO DISCHARGE OF DEBTOR**

While the provisions of a confirmed plan bind the debtor and any creditor or equity security holder, whether or not the claim or interest of such creditor or equity security holder is impaired under the plan and whether or not such creditor or equity security holder has accepted the plan, because the Debtor is not an individual and the plan provides for the liquidation of the property of the estate, in accordance with Section 1141(d)(3) of the Bankruptcy Code, the Debtor will not receive any discharge of debt in this bankruptcy case.

B.    **Modification of Plan**

The Plan Proponent may modify the Plan at any time before confirmation of the Plan. However, the Court may require a new disclosure statement and/or revoting on the Plan.

Upon request of the Debtor, the United States trustee, or the holder of an allowed unsecured claim, the Plan may be modified at any time after confirmation of the Plan but before completion of payments under the Plan, to (1) increase or reduce the amount of payments under the Plan on claims of a particular class, (2) extend or reduce the time period for such payments, or (3) alter the amount of distribution to a creditor whose claim is provided for by the Plan, to the extent necessary to take account of any payment of the claim made other than under the Plan.

C.    **Final Decree**

Once the estate has been fully administered, as provided in Rule 3022 of the Federal Rules of Bankruptcy Procedure, the Plan Proponent, or such other party as the Court shall designate in the Plan Confirmation Order, shall file a motion with the Court to obtain a final decree to close the case. Alternatively, the Court may enter such a final decree on its own motion.  The Debtor anticipates filing a motion to administratively close the case once required payments under the Plan have been commenced.

Dated: October 28, 2011

CROSSOVER FINANCIAL I, LLC


By: /s/ Mitchell B. Yellen
       Mitchell B. Yellen, Managing Member

APPROVED AS TO FORM


/s/ Stephen C. Nicholls
Stephen C. Nicholls, #30139
NICHOLLS & ASSOCIATES, P.C.
1850 Race Street
Denver, CO 80206
(303) 329-9700
(303) 329-6950
steve.nicholls@nichollslaw.com

Attorneys for Debtor