UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF COLORADO

| | |
|---|---|
| In re: | ) |
| | ) |
| CROSSOVER FINANCIAL I, LLC | ) Case No. 11-24257 SBB |
| EIN 20-3295455 | ) Chapter 11 |
| | ) |
| Debtor. | ) |

_____

**OBJECTION TO [PROPOSED] DISCLOSURE STATEMENT TO ACCOMPANY
DEBTOR'S CHAPTER 11 PLAN OF REORGANIZATION DATED OCTOBER 28, 2011**

_____

Creditors, First Regional Bank c/o Trust Administrative Services Corporation FBO Philip P. DeCelles, Account #xxx797, by and through Philip P. DeCelles, note holders, and The DeCelles Trust dated January 10, 2006, Philip P. DeCelles, Trustee, or Nancy L. DeCelles, Trustee, by and through Philip P. DeCelles and Nancy L. DeCelles, as Co-Trustees ("DeCelles Creditors"), through their counsel, Weinman & Associates, P.C. and D. Bruce Coles, Esq., hereby object to the adequacy of the Debtor's [Proposed] Disclosure Statement to Accompany Debtor's Chapter 11 Plan of Reorganization Dated October 28, 2011 ("Disclosure Statement"), and state as follows:

1.      The Debtor filed its Plan of Reorganization on October 28, 2011.

2.      The Debtor filed its Disclosure Statement on October 28, 2011.

3.      The Debtor's proposed Plan of Reorganization is a liquidating plan wherein it will sell its real property located in El Paso County, Colorado to pay creditor claims.

4.      The Debtor asserts that the value of its real property is $14 million.  However, the Debtor's Disclosure Statement provides no facts, information or analysis in support of the Debtor's asserted value of the real property.  The Disclosure Statement needs to provide Creditors with such facts and information to justify the Debtor's asserted value of $14 million for the real property, particularly in light of the fact that certain creditors of the Debtor have filed motions to dismiss the Chapter 11 bankruptcy proceeding and have asserted that the real property is worth no more than $5-$7 million.

5.      Prior to the filing of the Debtor's bankruptcy petition, the Debtor, through its manager, Mitchell Yellen ("Yellen"), executed numerous deeds of trust encumbering the Debtor's real property in the total amount of approximately $40 million, contrary to terms of the notes held by the Debtor's note holders.  Creditors which have filed motions to dismiss this case assert that the recording of the various deeds of trust constitute fraudulent conveyances under Colorado law and as such, are avoidable

by the Debtor as a Debtor-in-Possession.  Several of these deeds of trust were granted by the Debtor for the benefit of entities that are either owned by Yellen or to Yellen personally.  However, none of these entities or Yellen gave any consideration to the Debtor in exchange for the recording of the deeds of trust against the Debtor's real property, for such benefit.  Neither Yellen nor Yellen's entities had any ownership interest in the Debtor's real property.  Additionally, the deeds of trust were recorded at a time when certain note holders who are creditors of the Debtor had commenced state court proceedings to collect on their individual promissory notes.  The recording of the deeds of trust for the benefit of entities that gave the Debtor no consideration for such action and at a time when certain note holders had commenced state court proceedings, constitute classic badges of fraud under Colorado law.  The Debtor, in its Disclosure Statement, needs to thoroughly address these issues, including its conflicts of interest, and to advise its Creditors as to whether it will pursue these potential avoidance actions for the benefit of the estate and the impact of its decision on the Debtor's bankruptcy estate.

6.    The Debtor had loaned Home Place, LLC ("HPR"), another Yellen controlled entity, $20 million in order for HPR to acquire the real property, and took back a deed of trust.  After default by HPR to the Debtor (and the Debtor to its Creditors), the Debtor obtained the real property back by means of a deed in lieu of foreclosure agreement with HPR.  The Debtor agreed to release personal guarantees of Yellen and two other individuals who had guaranteed the loan from HPR to the Debtor without consideration.  Importantly, the granting of the personal guarantees by Yellen and the other individuals was a major selling point to potential investors at the time the Debtor was raising funds to loan to HPR to acquire the real property.  The release of the personal guarantees by Yellen and the two other individuals, was in violation of the Private Placement Memorandum and constitute blatant fraudulent conveyances under Colorado law and §548 of the Code.  C.R.S. 38-8-101(13) ("transfer" includes "release"); In re Endeavor Highrise, L.P., 432 BR 583, 653-54 (Bk. S.D. Tex 2010); and In re E2 Communications, Inc., 320 BR 889 (Bk. T.D. Tex. 2004).  This claim is a major asset of the Debtor's estate and actionable by the Debtor against Yellen and the two other individuals.  It is not addressed at all in the Disclosure Statement.  The Disclosure Statement needs to disclose this matter, address this issue in full, including conflict of interest, and to advise Creditors with respect to its position concerning pursuing the avoidance of the granting of the releases as fraudulent conveyances.

7.    In previous filings with the Bankruptcy Court, the Debtor has asserted that it has developed a detailed marketing plan to sell its real property for an amount which is either $14 million or $17 million.  The Disclosure Statement contains no description or information of any detailed marketing plan.  The Disclosure Statement needs to include a discussion of the Debtor's so-called "detailed marketing plan".

8.    The Debtor obtained $20,000,000 in 2005 and 2006 to purchase and develop the real property through HPR.  No accounting has been provided to Creditors of how

that money was spent and it appears likely to lead to yet additional claims for the Debtor.  The Disclosure Statement needs to be amended to provide that accounting and discussion of additional claims.

9.   In the Disclosure Statement and other filings with the Court, the Debtor asserts that Yellen is the sole member of the Debtor.  However, to secure the repayment of the investor's promissory notes, the Debtor, Yellen Family Partnership, LLC and Yellen entered into a "Membership Pledge and Security Agreement" which pledged as security for the repayment of the individual promissory notes a pro rata interest in Yellen's sole membership interest in the Debtor.  According to the Membership Pledge and Security Agreement, upon a default of the promissory notes, the holder of the promissory note acquires its pro rata share of Yellen's membership interest in the Debtor.  The individual promissory notes went into default in approximately December 2007.  As such, the note holders acquired Yellen's membership interest in the Debtor and Yellen is no longer a member of the Debtor.  The Disclosure Statement needs to address this issue, particularly in light of the actions which have been taken by Yellen subsequent to December 2007 and, upon information and belief, without the approval of the members, including but not limited to the granting of the numerous deeds of trust discussed above, the filing of the Chapter 11 bankruptcy proceeding itself, and the filing of the pending Disclosure Statement and Plan. Cf. In re Comscape Communications, Inc., 423 BR 816, 829-30 (Bk. S.D. Oh. 2010); and In re Telluride Income Growth Limited Partnership, 311 BR 585 (Bk. Colo. 2008).  Indeed, the Corporate Resolution filed by the Debtor (Docket No. 3) asserts that at a special meeting of the members of the Debtor, the members unanimously consented to the filing of the Chapter 11 case.

10.   Certain creditors of the Debtor have filed motions to dismiss the Chapter 11 bankruptcy case on the basis of, among other things, the Chapter 11 bankruptcy proceeding having been filed in bad faith.  If the Bankruptcy Court ultimately determined that the Chapter 11 bankruptcy was indeed filed in bad faith, such a determination would, pursuant to 11 U.S.C. §1129(a)(3), have an adverse impact on the confirmation of any proposed plan filed by the Debtor.  The Debtor needs to address the pre-petition issues of bad faith raised by the objecting creditors and their potential impact on the ability of the Debtor to obtain confirmation of any Plan of Reorganization that it might propose.

11.   During the pendency of the Chapter 11 bankruptcy proceeding, the Debtor as a Debtor-in-Possession is required to timely file monthly financial reports with the Bankruptcy Court and provide copies of those reports to the U.S. Trustee.  The Debtor has been consistently late with the filing of its monthly financial reports and with respect to each of the reports that it has filed, has consistently failed to comply with the requirements of the Operating Guidelines of the U.S. Trustee by failing to completely and accurately prepare each monthly report. The Disclosure Statement needs to address this issue.  In order for the Debtor's Plan to be confirmed, the Debtor is required, pursuant to 11 U.S.C. §1129(a)(2), to establish that it has

3

complied with all applicable provisions of the Bankruptcy Code. The Debtor's continuing failure to file complete and accurate monthly financial reports establishes that the Debtor has not complied with all of its requirements as a Debtor-in-Possession under the Bankruptcy Code.

12.     The Debtor's Disclosure Statement sets forth that it the information in the Disclosure Statement is current as of September 20, 2011. The information contained in the Disclosure Statement needs to be updated, particularly in light of the fact that the Debtor had initially filed a motion to employ a real estate broker to sell the real property which it subsequently withdrew and thereafter filed a new motion to employ a different real estate broker to attempt to sell its real property.

13.     The Disclosure Statement should set forth that its proposed liquidating plan is an open-ended plan in that the Plan does not set a deadline by which the real property is to be liquidated nor does it address what is to happen should the real property not be sold. Theoretically, this means that the Debtor can attempt to sell the real property for the next 25 or 50 years if its Plan is approved by the Bankruptcy Court.

14.     The Disclosure Statement needs to disclose that it also appears that the Plan proposes that to the extent that Yellen has any membership interest in the Debtor, that he will retain such membership interest following confirmation of the Debtor's Plan. The Disclosure Statement needs to advise Creditors that such a provision in the Plan violates the "absolute priority rule" and the impact the violation of this rule will have upon confirmation of the Debtor's proposed Plan.

        WHEREFORE, for reasons as set forth above, the DeCelles Creditors respectfully request that this Court enter an order denying the adequacy of the Debtor's proposed Disclosure Statement, and for such further relief as is deemed appropriate by the Court.

DATED: December 19, 2011              Respectfully Submitted,

                                      WEINMAN & ASSOCIATES, P.C.


                                      By: \s\ William A. Richey
                                          Jeffrey A. Weinman, #7605
                                          William A. Richey, #13438
                                          730 17th Street, Suite 240
                                          Denver, CO 80202-3506
                                          Telephone: (303) 572-1010
                                          Facsimile: (303) 572-1011
                                          jweinman@epitrustee.com
                                          wrichey@weinmanpc.com

4

QUINN & COLES, LLP


By: \s\ D. Bruce Coles
      Donald Bruce Coles, #7776
      Ptarmigan Place
      3773 Cherry Creek N. Dr., Ste. 620
      Denver, CO 80209-3820
      Telephone: (303) 355-2630
      Facsimile: (303) 355-2773
      dbcoles@qwestoffice.net

## CERTIFICATE OF SERVICE

I hereby certify that I have served on this 19th day of December, 2011, a true and correct copy of the foregoing **OBJECTION TO [PROPOSED] DISCLOSURE STATEMENT TO ACCOMPANY DEBTOR'S CHAPTER 11 PLAN OF REORGANIZATION DATED OCTOBER 28, 2011** by placing the same in the United States mail, postage prepaid, addressed to and by e-mail to:

Alan K. Motes, Esq.
U.S. Trustee's Office
999 18th St., #1551
Denver, CO 80202

Donald W. Alperstein, Esq.
Alperstein & Covell, P.C.
1600 Broadway, Suite 2350
Denver, CO 80202

Philip P. DeCelles and Nancy L. DeCelles
DeCelles Family Trust
1124 State Lane
Yountville, CA 94599

Jason P. Kane, Esq.
Ranson & Kane, P.C.
3475 Briargate Blvd., Ste. 201
Colorado Springs, CO 80920

Stephen C. Nicholls, Esq.
1850 Race St.
Denver, CO 80206

John Randolph Torbet, Esq.
Torbet & Tuft, LLC
320 E. Costilla St.
Colorado Springs, CO 80903

Steven J. Barr, Esq.
5410 Powers Center Pt., Ste. 100
Colorado Springs, CO 80920

Jeffrey L. Weeks, Esq.
Weeks & Luchetta, LLP
102 S. Tejon St., Ste. 910
Colorado Springs, CO 80903

Daniel K. Usiak, Esq.
128 S. Tejon St., Ste. 202
Colorado Springs, CO 80903

\s\ Lisa R. Kraai