# UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF COLORADO

| | |
|---|---|
| In re: ) | |
| ) | |
| CROSSOVER FINANCIAL I, LLC ) | Case No. 11-24257 SBB |
| EIN: 20-3295455 ) | Chapter 11 |
| ) | |
| Debtor. ) | |

**APPEARANCES:**

Stephen Nicholls, Esq.  
Nicholls & Associates, P.C.  
1850 Race Street  
Centennial, CO 80112  
COUNSEL FOR THE DEBTOR

D. Bruce Coles, Esq.  
Law Office of D. Bruce Coles, P.C.  
7500 E. Arapahoe Road, Suite 360  
Denver, CO 80206  
COUNSEL FOR THE  
"DECELLES CREDITORS"

Steven Barr, Esq.  
405 S. Cascade, Suite 105  
Colorado Springs, CO 80903  
COUNSEL FOR THE  
"BROWN CREDITORS"

Thomas F. Quinn, Esq.  
303 East 17th Street, Suite 800  
Denver, CO 80203  
COUNSEL FOR ROSS A. REINEKE

**ORDER DENYING**
**(1) THE SECOND MOTION TO DISMISS FILED BY FIRST REGION BANK C/O TRUST ADMINISTRATIVE SERVICES CORPORATION FBO PHILLIP P. DECELLES, ACCOUNT #XXX797 BY AND THROUGH PHILIP P. DECELLES, NOTE HOLDERS AND THE DECELLES TRUST DATED JANUARY 10, 2006, PHILIP P. DECELLES, TRUSTEE, OR NANCY L. DECELLES, TRUSTEE, BY AND THROUGH PHILIP P. DECELLES AND NANCY L. DECELLES, AS CO-TRUSTEES (DOCKET #111) AND**
**(2) THE JOINDER IN THE SECOND MOTION TO DISMISS FILED BY ROSS REINEKE (DOCKET #120)**

THIS MATTER came before the Court for an evidentiary hearing on May 21, 2012, with respect to:

(1) The Second Motion to Dismiss Chapter 11 Case for Lack of Authority to File filed December 29, 2011 ("Second Motion to Dismiss") by First Region Bank c/o Trust Administrative Services Corporation FBO Phillip P. DeCelles, Account #xxx797 by and through Philip P. DeCelles, note holders and The DeCelles Trust dated January 10, 2006, Philip P. DeCelles, Trustee, or Nancy L. DeCelles, Trustee, by and through Philip P. DeCelles and Nancy L. DeCelles ("Mr. DeCelles"), as Co-Trustees ("DeCelles Creditors");[1]

(2) The Joinder thereto filed by Ross Reineke ("Mr. Reineke") on January 12, 2012;[2]

---

[1] Docket #111.

[2] Docket #120.

(3) The Response thereto filed by Oscar A. Aguirre, Rachel Lynn Aguirre, Anna M. Baker, Dan S. Baker, Kathleen H Barton, P. Dale Beggs, Robert Billings, Jeffrey L. Bright, Sandra K. Bright, Curt and Natelle Brown, Edmund B.W. Chun, Richard Craig, Susan Craig, Gordon Cupples, Roxana Cupples, Brian R. Deis, Donna R. Deis, Gary A. Deis , Nancy H. Deis, Arthur C. Eisberg, Jr., Lynn N. Eisberg, Mark C. Farrar, Maxine Foster, Lana Garner, Cristine R. George, Thomas E. George , Carol Gillet , Thomas R. Gillet , Peter G. Guerrini, Bryan Hartwig, JoAnn Hartwig, George E. Hise, Gary and Barbara Hooper, Richard Kaapun , Charles A. King, Margaret Kullberg, Thomas and Janel Maccarrone, James P. McBride, Donald P. Milner, Sandra Clark Milner , David Munyon, Steven C. Olsen, Ronald Paxson, Sharon Paxson, Jack H. Pulcheon, Richard A. Roderick, Randy Rothe, Terry Shade, Roger K. Tedds, Bruce Toelle, Maryanne Toelle, Melvin Uchida, Linda Morley Wells, Walter C. Wells , Croften B. Wilson, Patricia A. Wilson ("Brown Creditors") filed February 6, 2012;[3]

(4) The Response by Brown Creditors filed February 6, 2012;[4]

(5) The Debtor's Objection filed February 6, 2012;[5] and

(6) The Reply filed by the DeCelles Creditors on February 14, 2012.[6]

At the conclusion of the hearing on May 21, 2012, the Court requested that proposed findings of fact and conclusions of law be submitted to the Court on or before June 4, 2012.

The Court, having conducted an evidentiary hearing and having reviewed (a) the pleadings before the Court, (b) the submitted proposed findings of fact and conclusions of law submitted by the parties, (c) the within case file, and (d) applicable statutory provisions and case law, makes the following findings of fact, conclusions of law, and enters the following Order.

I. **Stipulated and Established Facts**

On May 21, 2012, the Court conducted an evidentiary hearing on the pending matters. Prior to the hearing, the DeCelles Creditors submitted their Stipulation of Facts for Ruling on Decelles Creditors' Second Motion to Dismiss ("Stipulation of Facts").[7] The Court accepted the

---

[3] Docket #126.

[4] Docket #127.

[5] Docket #128.

[6] Docket #131.

[7] Docket #154.

Stipulation of Facts on the record in open court during the evidentiary hearing on May 21, 2012. The facts as submitted and accepted are:[8]

    1.    Crossover Financial I, LLC ["Debtor" or "Crossover"] is a limited liability company under Colorado law.

    2.    [Debtor] was formed in 2005 for the purpose of raising funds through a Private Placement Memorandum ("PPM") to be loaned by [Debtor] to a related entity, HPR, LLC ("HPR"), for the acquisition and residential development of approximately 440 acres of real property located near Monument, Colorado.

    3.    Through the PPM, [Debtor] raised $21,542,000, and in exchange issued 108 promissory notes ("Notes") to parties providing such funds pursuant to the PPM ("Noteholders.")

    4.    Three of those Notes were received by the DeCelles Creditors for monies loaned totaling over $2 million.

    5.    The Notes issued by [Debtor] provided either for monthly or quarterly interest payments commencing in 2006 and a balloon payment of principal and unpaid interest on December 31, 2010.

    6.    Monies raised by [Debtor] under the PPM from its 108 Noteholders were loaned to HPR and used, in part, to acquire title to the 440 acre parcel.

    7.    In addition, monies loaned to HPR were used to commence development as well as service its loan from [Debtor].

    8.    [Debtor] in turn used loan monies repaid by HPR to make periodic interest payments owed to its 108 Noteholders.

    9.    Development of the 440 acres stalled in mid 2007, and HPR defaulted on its repayment obligations to HPR due to lack of funds.

    10.    The [Debtor's] loan to HPR was secured by a first priority deed of trust on the 440 acre parcel acquired by HPR.

    11.    As a consequence of its default to [Debtor], HPR entered into an Agreement with [Debtor] dated November 12, 2007 to provide [Debtor] with a deed for the 440 acres in lieu of foreclosure by [Debtor] on its first deed of trust.

    12.    The [Debtor's] loan to HPR was also subject to conditional personal guaranties of Mitchell Yellen [ also referred

---

[8] The Court includes the Stipulated Facts almost verbatim to those set forth in the Stipulation of Facts. Reference to the Debtor and/or Crossover have been modified slightly for consistency in this opinion.

to herein as "Mr. Yellen"] along with the two other principals in HPR.

13. The Deed-in-Lieu of Foreclosure Agreement also provided for the release of the personal guaranties to [Debtor] of Mitchell Yellen and the other two principals in HPR.

14. Without the loan payments from HPR, [Debtor] had insufficient funds to continue making interest payments to the Noteholders and their Notes were in default for non-payment by December 2007 and at all times thereafter.

15. During 2009 and 2010, several of the Noteholders including the DeCelles creditors commenced lawsuits against [Debtor] for the default on their Notes.

16. The DeCelles filed their Complaint in the El Paso County District Court ("DeCelles Lawsuit") against the [Debtor] and also named Mitchell Yellen and the other two guarantors of HPR's loan from [Debtor] as individual defendants for alleged losses on their Notes.

17. On March 9, 2011, the District Court in the DeCelles Lawsuit entered judgment against Debtor for the DeCelles Creditors on their three Notes, stayed until the original Notes were produced to the Court for merger into the judgments.

18. The DeCelles Creditors produced their original Notes to the Court and on March 28, 2011 obtained transcripts for the judgments.

19. After the Debtor's bankruptcy petition was filed, the DeCelles Creditors negotiated a settlement of their claims against the individual named defendants in the DeCelles Lawsuit.

20. In early 2012, the DeCelles Creditors together with Mitchell Yellen as an individually named defendant in the DeCelles Lawsuit submitted their Stipulation for Partial Dismissal With Prejudice.

21. On January 31, 2012, the District court issued its Order approving the Stipulation, closed the case finding the Stipulation resolved the only remaining claims and further specified:

> This Order does not affect, in any way, Plaintiffs' claims and judgment entered against Debtor Financial I, LLC.

22. Each of 108 Notes was secured by Membership Pledge And Security Agreement ("Security Agreement") executed by Mitchell Yellen in which a pro rata portion of his membership

interest in [Debtor] was pledged to secure the notes in the event of a default.

23. Terms of each Security Agreement in para. 3 provided the following:

> . . . All such rights of the Pledgor to vote and give consents, waivers and ratification, if any, shall cease in case default shall occur and be continuing. The Secured Party, subsequent to any default, may transfer or cause to be transferred into the Secured Party's name or into the names of his nominee or nominees any or all of the Pledged Interest. At any times after the occurrence of default, the Secured Party also may vote any or all of the Pledged Interest (whether or not transferred) and give all consents, waivers and ratifications, if any, in respect thereof and otherwise act with respect thereto as though they were the outright owners thereof. (The Pledge hereby irrevocably constitutes and appoints the Secured Party, the proxy and attorney-in-fact of the Pledgor, with all power of substitution to do so.)

24. On June 14, 2011, Mitchell Yellen, acting as Sole Member and Manager of the LLC, executed a "Company Resolution" for [Debtor] stating a special meeting of members was held that date and a resolution was adopted by unanimous consent authorizing and directing Yellen to file [Debtor]'s Chapter 11 petition for bankruptcy relief.

25. Article VI - Management - of the Debtor's Operating Agreement provides:

> "Management. All management of the Company shall be vested in the Manager. The affirmative consent (regardless of whether written, oral, or by course of conduct) of the Manager shall constitute sufficient consent for the purposes of any provision of this Agreement of the Colorado Act. All decisions concerning the business affairs of the Company shall be made by the Manager...."

26. Article VI - Management - of the Debtor's Operating Agreement further provides:

> Section 6.2 Powers of Manager. Without limiting the generality of Section 6.1, the Manager shall have power and authority, on behalf of the Company:
>
> a. To acquire property from any Person as the Manager may

determine. The fact that the Manager is directly or indirectly affiliated or connected with any such Person shall not prohibit the Manager from deal with that Person;

      b. To borrow money for the Company from banks, other lending institutions, the Manager, Entities, Persons or affiliates of the Manager on such terms as the Manager deems appropriate, and in connection therewith, to hypothecate, encumber and grant security interest in the assets of the Company to secure repayment of the borrowed sums;

      c. To purchase liability and other insurance to protect the Company's property and business;

      d. To hold and own and Company real and/or personal properties in the name of the Company;

      e. To invest any Company funds temporarily (by way of example but not limitation) in time deposits, short-term governmental obligations, commercial paper or other investments;

      f. To sell or otherwise dispose of all or substantially all of the assets of the Company as part of a single transaction or plan so long as such disposition is not in violation of or a cause of a default under any other agreement to which the Company may be bound.

      g. To execute on behalf of the Company all instruments and documents, including without limitation, contracts; checks; drafts; notes and other negotiable instruments; mortgages or deeds of trust; security agreements; financing statements; documents providing for

the acquisition, mortgage or disposition of the Company's property; assignments, bills of sale; leases; partnership agreements; operating agreements of other limited liability companies; and any other instruments or documents necessary, in the opinion of the Manager, to the business of the Company;

h. To employ accountants, legal counsel, managing agents or other experts to perform services for the Company and to compensate them from Company funds;

I. To enter into any and all other agreements on behalf of the Company, with any other Person for any purpose, in such forms as the Manager may approve; and

j. To do and perform all other acts as may be necessary or appropriate to the conduct of the Company's business.

27. The next day, June 15, 2011, [Debtor] filed its Chapter 11 petition under signature of Mitchell Yellen to commence this case.

28. The Operating Agreement for [Debtor] in effect on June 15, 2011 contains no reference to filing of bankruptcy for the LLC.

29. Article VIII - Admission of New Members - of the Debtor's Operating Agreement provides:

8.1 Admission. The Member may elect to admit another Person as a Member of the Company at any time, provided, that in the event another Person is admitted as a Member, this Agreement shall be amended accordingly to reflect the new ownership percentages and tax classification of the Company and such newly admitted Member shall be required to execute and become a party to such amendment.

8.2 Transfer. The Member's interest in the Company shall be transferable in whole or part without consent of any other Person, and the

assignee shall be admitted to all the rights of the Member who assigned such interest.

30. Neither the DeCelles Creditors nor any of the other Noteholders have been admitted as a Member of the Debtor.

31. Neither the DeCelles Creditors nor any of the other Noteholders received notice of the special meeting on June 14, 2011 to authorize [Debtor]'s bankruptcy filing, nor did they vote the pro rata membership interests pledged to them to authorize the bankruptcy filing for [Debtor].

32. Based on the original principal amounts of the 108 Notes the approximate respective pro rata membership interests pledged is as follows:

| | |
|---|---|
| The DeCelles Creditors: | 10% |
| Ross A. Reineke: | 2% |
| The Bowman Creditors: | 21% |
| The Brown Creditors: | 58% |
| Others: | 9% |

In addition to the above and foregoing, the Court also took judicial notice of several opinions of the El Paso County District Court for claims against the Debtor entered prior to its filing of this bankruptcy case and these opinions were attached as Exhibits D-F to the Response filed by the Brown Creditors.

## II. Issue

The central issue before the Court is whether Mr. Yellen had the authority to file this bankruptcy case. If Mr. Yellen did not have authority to file this case then the case must be dismissed for lack of jurisdiction under 11 U.S.C. § 109.[9] The question of whether a corporation has authority to file bankruptcy is controlled by state law.[10] No other bases for dismissal under 11 U.S.C. § 1112, or otherwise, are invoked or cited by the DeCelles Creditors or Mr. Reineke.

## III. Discussion

### A. Summary of the Arguments Before the Court

The Debtor is a Colorado limited liability company. The statutory authority for its acts is set forth in COLO. REV. STAT. § 7-80-101, *et seq.* The Motion filed by the DeCelles Creditors—and joined by Mr. Reineke—is based on the contention that Debtor filed it's Chapter 11 voluntary petition without the requisite statutory authority and/or contractual authority under the Debtor's Operating Agreement or the Security Agreement.

---

[9] *See, e.g., In re Yellow Cab Co-Op., Ass'n,* 144 B.R. 505 (D. Colo. 1992) and *In re Telluride Income Growth Limited Partnership,* 311, B.R. 585 (Bankr. D.Colo. 2004).

[10] *Yellow Cab,* 144 B.R. at 509.

8

### B. The Security Agreement

The DeCelles Creditors assert that the terms of the Security Agreement for the pledge of *a pro rata* share of the limited liability company membership interest as security for promissory notes issued in connection with the Debtor's Private Placement Memorandum divested control of the Debtor's management from it's sole member, Mr. Yellen. The DeCelles Creditors' argument is that the security interest is self-executing. Thus, upon a default of any respective promissory note, the control of Debtor's management from it's sole member, Mr. Yellen, is divested. As asserted by counsel for the DeCelles Creditors, the default *automatically* vested the Debtor's voting rights in *"free floating"*[11] secured creditors.

The DeCelles Creditors' argument focuses on language found in paragraph 3 of Security Agreement:

> All such rights of the Pledgor to vote and give consents, waivers and ratification, if any, shall cease in case default shall occur and be continuing. The Secured Party, subsequent to any default, may transfer or cause to be transferred into the Secured Party's name or into the names of his nominee or nominees any or all of the Pledged Interest. At any times after the occurrence of default, the Secured Party also may vote any or all of the Pledged Interest (whether or not transferred) and give all consents, waivers and ratifications, if any, in respect thereof and otherwise act with respect thereto as though they were the outright owners thereof. (The Pledge hereby irrevocably constitutes and appoints the Secured Party, the proxy and attorney-in-fact of the Pledgor, with all power of substitution to do so.)

The Security Agreement terms provide that if, there is a default in the underlying Note, the rights of Mr. Yellen, the sole member of the Debtor, to vote and give consents, waiver or ratifications shall cease. The Security Agreement also provides the "Secured Party" may transfer his or her the pledged interest and may also vote any or all of the pledged interest and gives to the "Secured Party" a proxy and power of attorney to act for Pledgor.

The DeCelles Creditors argue that the language causes the agreement to be self-executing as to voting rights. That is, a default in the promissory notes, standing alone without any other action, notice, or demand, prevented the Debtor's manager, Mr. Yellen, from exercising any voting rights in the Debtor, but particularly, the authorization to file the voluntary petition for bankruptcy relief.

### C. Conflicting Arguments Raised by the DeCelles Creditors and Mr. Reineke

The DeCelles Creditors timing in raising the argument that the Security Agreement is self-executing as to voting rights is curious for a number of reasons. First, it is stipulated that default of the promissory notes occurred by December of 2007, nearly two and half years prior to the filing of the bankruptcy petition. Second, the first time the argument was presented was six

---

[11] The DeCelles Creditors' counsel utilized the novel terms "free floating" security interest and "free floating" secured creditors, at the time of the evidentiary hearing. The Court mused that, perhaps, the DeCelles Creditors were identifying some type of an "inchoate" secured interest.

months after the filing of the bankruptcy,[12] and after the filing of a separate motion to dismiss filed by DeCelles Creditors and also joined by Mr. Reineke. Third, the present argument conflicts with the arguments and positions of the DeCelles Creditors in two Colorado State Court lawsuits[13] and of the Mr. Reineke in four Colorado State Court lawsuits.[14]

In Colorado District Court case styled: *First Regional Bank, et al. v. P. Dale Beggs, et al.*, 10CV2880, filed in May 2010, the DeCelles Creditors alleged in their Complaint that:

(1) "Yellen was at the time and is today the sole member of Crossover."[15]
(2) "Yellen's correspondence did not mention Crossover, or the fact that Crossover was a single member LLC, with Yellen being the sole member."[16]

Mr. DeCelles did not challenge the right of Mr. Yellen to act on behalf of Crossover as the manager and sole member in the two Colorado District Court lawsuits. Mr. Reineke filed four Colorado District Court cases, one involving Crossover but all involving promissory notes and the Security Agreement. This Court is advised—and it does not appear to be refuted—that Crossover and the other three entity Defendants, defended on the basis that Mr. Reineke was a member of Crossover and the other entities. Mr. Reineke also vigorously denied he was member in at least two different affidavits.[17] In part Mr. Reineke said " I have not exercised any rights I would have had under a Membership Pledge and Security Agreement…". And "I have intentionally never exercised any rights I have under the Membership Pledge and Security Agreement because I do not wish to be a member of the Defendant."

In the four Colorado District Court cases wherein Reineke was Plaintiff, the Courts all agreed with Mr. Reineke and ruled that the word "may" in the Agreement was permissive and gave the "Secured Party" under the Agreement a choice and required *affirmative action* by Mr. Reineke or any "Secured Party." In *First Regional Bank, et al. v. P. Dale Beggs, et al.*, 10CV2880, that Court also entered a similar finding.[18]

---

[12] The first motion to dismiss was filed on September 20, 2011 (Docket #43).

[13] The two cases are: (1) *First Regional Bank v. Black Forest Partners, LLC*, Case No. 09-CV-5026 filed in the District Court for El Paso County, Colorado and (2) *First Regional Bank, et al. v. P. Dale Beggs, et al.*, 10CV2880, filed in the District Court for El Paso County, Colorado.

[14] The four cases are: (1) *Reineke v. Wildwood Group, LLC*, Case No. 2009-CV 6128 filed in the District Court for El Paso County, Colorado; (2) *Reineke v. Wildwood Ridge Partners, LLC*, Case No. 2009-CV-6129, filed in the District Court for El Paso County, Colorado; (3) *Reineke v. Zephyr Development Partners, LLC*, Case NO. 2009-CV-6130, filed in the District Court for El Paso County, Colorado; and (4) *Reineke v. Crossover Financial I, LLC*, Case No. 2009-CV-2984 filed in the District Court for Douglas County, Colorado.

[15] Exhibit A to Debtor's Objection, paragraph 26.

[16] Exhibit A to Debtor's Objection, paragraph 27, first sentence. The Court notes that, in the proposed findings and conclusions submitted by the DeCelles Creditors, they assert: "Again in April 2011 in *DeCelles v. Crossover et al.,* 11CV2430, Mr. DeCelles twice claimed Mr. Yellen was the sole member of Crossover at paragraphs 121 and 142(a). Exhibit C to DeCelles Motion." The Court has reviewed the original Motion to Dismiss and the Second Motion to Dismiss filed by the DeCelles Creditors and it cannot find the document that is referenced by the DeCelles Creditors. Nevertheless, it does appear that in various Colorado state courts, the DeCelles Creditors have asserted that Mr. Yellen is the sole member of the Debtor.

[17] *See* Exhibits B & C to the Brown Creditors' Objection (Docket #127).

[18] *See.,* Exhibits D, E, F, and G to the Brown Creditors' Objection (Docket #127).

This Court concludes that it appears that the DeCelles Creditors and Mr. Reineke take positions to suit their litigation tactics regardless of whether they conflict with each other. The Court declines to accept the DeCelles Creditors' and Mr. Reineke's new argument in this bankruptcy case, which is directly opposed to asserted facts, arguments with respect to the law, and other assertions previously made in six separate state court matters.[19]

### D. *In re Lake County Grapevine Nursery Operations*

Mr. DeCelles and Mr. Reineke maintain that they do not have to be members to exercise their rights per the proxy and the power attorney vehicles listed in the Agreement. The argument being advanced in the DeCelles Creditors' Motion and by Mr. Reineke in his Joinder has been rejected in the matter of *In re Lake County Grapevine Nursery Operations*.[20] In that case, the members of the limited liability company entered into a settlement agreement and as security, entered into a Pledge Agreement that automatically cut off the voting and distribution rights in the LLC upon a default of the settlement agreement. As here, the creditor argued that the Pledge Agreement prevented the members from authorizing the filing for bankruptcy relief. In rejecting the argument the Bankruptcy Court held:

> However, a rule allowing dismissal for the reasons stated in the motion would create confusion and disputes over the legitimacy of filings whenever an ownership interest in the debtor has been pledged as security. Such uncertainty is avoided by a clear rule: only the members or lawful managers are entitled to vote on behalf of a limited liability company, notwithstanding a pledge of membership rights as collateral.[21]

In reaching it's conclusion, the Bankruptcy Court looked to California law which provided that management of a limited liability company vested in the members and a pledge of security in a membership interest shall not cause the member to cease being a member or to grant to anyone else the power to exercise any rights or powers of a member.

Similarly, Colorado law prevents the exercise of controlling rights in a limited liability company by persons other than members:

> The interest of each member in a limited liability company constitutes the personal property of the member and may be assigned or transferred. Unless the assignee or transferee is admitted as a member, the assignee or transferee shall only be entitled to receive the share of profits or other compensation by way of income and the return of contributions to which that member would otherwise be entitled and shall have no right to participate in the management of the business and activities of the

---

[19] The parties have referred to the contrary positions being taken by the DeCelles Creditors and Mr. Reineke as being precluded under collateral estoppel (issue preclusion) or *res judicata* (claim preclusion). It would appear that what is actually being asserted is "judicial estoppel." *See New Hampshire v. Maine,* 532 U.S. 742, 750, 121 S.Ct. 1808, 1815, 149 L.Ed.2d 968 (2001) (setting forth the elements of judicial estoppel).

[20] 441 B.R. 653 (Bankr. N.D. Cal. 2010).

[21] *Id.* at 655.

limited liability company or to become a member.[22]

The DeCelles Creditors argue that the Court should simply ignore the language of COLO. REV. STAT. § 7-80-702(1) because COLO. REV. STAT. §7-80-108 provides, with limited exceptions, the provisions of an operating agreement prevail over conflicting provisions of the Colorado Limited Liability Company Act ("Act").

The Decelles Creditors argue that because the "Transfer" section of the Operating Agreement—Article 8.2—allows for the transfer in whole or part of a member's interest without consent, the admission requirement of the Act does not apply.[23] This analysis contorts the language of the "Transfer" section. That is, the provision allows *the* "Member" to transfer his interest in the Company without the consent of any other "Person." Under the terms of the Operating Agreement, Article I, ¶1.3, the "Member" is Mitchell Yellen. A "Person" means "any individual or Entity and the heirs, executors, administrators, legal representatives, successors, and assigns of the 'Person' where the context so permits." In other words, *the* "Member," Mr. Yellen, *if he so were to choose*, could transfer *his* interest in the Company without the consent of any other "Person." However, any other "Person," does not necessarily have the ability to divest Mr. Yellen of his interest in the Company.

It does not appear that he ever divested himself of his "Member" interest in the Company. Further, it does not appear that he ceased being the "Manager." Moreover, even if the "Transfer" section permitted the involuntary ouster of Mr. Yellen by another "Person" or "Member," it is undisputed that none of the Note Holders exercised or foreclosed upon the respective security interests. It is also undisputed that no additional members have been admitted as a "Member" of the Debtor.

Under the Act, and consistent with the holdings of the various state court rulings, Colorado law requires a secured creditor to enforce the security agreement and become admitted as a member before voting rights associated with membership interests pledged as collateral can be exercised. "Thus, neither the pledging of the membership rights as security nor the declaration of a breach by the secured party is sufficient to divest the pledging member of the right to vote. To hold otherwise would permit someone who is not a member or manager to control a limited liability company."[24]

---

[22] COLO. REV. STAT. §7-80-702 (1).

[23] Article VIII of the Debtor's Operating Agreement (entitled "Admission of New Members") provides:

> 8.1 Admission. The Member may elect to admit another Person as a Member of the Company at any time, provided, that in the event another Person is admitted as a Member, this Agreement shall be amended accordingly to reflect the new ownership percentages and tax classification of the Company and such newly admitted Member shall be required to execute and become a party to such amendment.
>
> 8.2 Transfer. The Member's interest in the Company shall be transferable in whole or part without consent of any other Person, and the assignee shall be admitted to all the rights of the Member who assigned such interest.

[24] *Lake County Grapevine Nursery*, 441 B.R. at 655.

## IV. Order

For the forgoing reasons, it is

ORDERED that the DeCelles Creditors' Second Motion to Dismiss and the Joinder thereto filed by Ross Reineke are hereby DENIED.

IT IS FURTHER ORDERED that this Court will set a hearing regarding the adequacy of the Debtor's Disclosure Statement by separate Notice.

DATED: July 2, 2012

BY THE COURT:

*Sid Brooks*

Sidney B. Brooks
United States Bankruptcy Judge